# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40537

———————

IN THE MATTER OF TEXXON PETROCHEMICALS, L.L.C.,

*Debtor*,

TEXXON PETROCHEMICALS, L.L.C.,

*Appellant*,

*versus*

GETTY LEASING, INCORPORATED,

*Appellee*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:21-CV-864

———————————————————

Before CLEMENT, GRAVES, and HIGGINSON, *Circuit Judges*.

STEPHEN A. HIGGINSON, *Circuit Judge*:

In late 2020, Appellant Texxon Petrochemicals, LLC ("Texxon") filed for bankruptcy. In that proceeding, Texxon filed a motion to assume executory contract, alleging that it entered into a contract with Getty Leasing in 2018 to purchase property. Getty Leasing objected to the motion. After an evidentiary hearing, the bankruptcy court denied the motion on the grounds that, for multiple reasons, there was no valid contract to assume. The district

No. 22-40537

court affirmed, finding there was insufficient evidence to show that, as required under Texas law, the alleged contract was sufficient as to the property identity or comprised an unequivocal offer or acceptance. Texxon appeals.

I.

While Texxon's appeal before the district court was pending, the bankruptcy court dismissed the underlying bankruptcy proceeding.[1] In opposing Texxon's appeal before the district court, Getty Leasing did not address the impact that the dismissal of the underlying proceeding had as to the viability of the appeal. In this court, however, Getty Leasing filed an opposed motion to dismiss the appeal for lack of jurisdiction. In sum, Getty Leasing argues that because the relief sought by Texxon requires a remand to the bankruptcy court, the dismissal of the underlying bankruptcy proceeding mooted the present appeal. We first address this motion before turning to the merits of the appeal.

Getty Leasing primarily contends that this appeal is mooted by the dismissal of the underlying bankruptcy proceeding.[2] In the bankruptcy

---

[1] On June 2, 2021, the U.S. Trustee assigned to Texxon's bankruptcy proceeding filed a motion seeking to either convert the case to Chapter 7, dismiss the case with prejudice, or subject Texxon to confirmation deadlines after Texxon failed to file required documents and pay required fees. On June 6, 2021, with the agreement of the parties, the bankruptcy court granted this motion in part, ordering Texxon to either obtain confirmation of a plan of reorganization, convert the case to Chapter 7, or move to dismiss the case with prejudice for 180 days by October 29, 2021. The bankruptcy court noted that failure to adhere to this deadline might result in an order dismissing the case with prejudice for 180 days without further notice or hearing. On November 18, 2021, after this deadline passed without confirmation or conversion, the bankruptcy court dismissed the case with prejudice to re-filing for 180 days. There is nothing in the record indicating that Texxon has re-filed or otherwise sought to reopen the bankruptcy proceeding.

[2] Getty Leasing also contends that Texxon lacks standing to bring this appeal because Texxon is no longer a debtor-in-possession and therefore no longer entitled to

No. 22-40537

context, we recognize the judicially created doctrine of "equitable mootness," which is a "kind of appellate abstention that favors the finality of reorganizations and protects the interrelated multi-party expectations on which they rest." [3] *In re Pac. Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009); *see also In re Manges*, 29 F.3d 1034, 1038–39 (5th Cir. 1994). Getty Leasing appears to argue that the dismissal of an underlying bankruptcy proceeding operates similar to the confirmation of a reorganization plan and, therefore, effectively forecloses judicial relief. Texxon disagrees, arguing that equitable mootness does not apply here because the issue on appeal—the validity of the contract—involves a matter ancillary to the bankruptcy. [4] *See, e.g.*, *In re Sundaram*, 9 F.4th 16, 21 (1st Cir. 2021) ("The principal exception to the general rule provides that an appeal is insulated from mootness following the dismissal of the underlying bankruptcy case if the issue on appeal is merely ancillary to the bankruptcy.").

---

assume any contract under the Bankruptcy Code. Put another way, Getty Leasing argues that the dismissal of the underlying bankruptcy has made it impossible for us to grant relief to Texxon. This argument is best considered as one relating to mootness, however, not standing. *See Env. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525–26 (5th Cir. 2008) ("Mootness is the doctrine of standing in a time frame. The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness)." (citation and internal quotation marks omitted)).

[3] We assess three factors when determining whether equitable mootness should be applied: "(1) whether a stay was obtained, (2) whether the plan has been 'substantially consummated,' and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan." *In re Pacific Lumber Co.*, 584 F.3d 229, 240 (5th Cir. 2009) (citation and internal quotation marks omitted).

[4] Most of the authority cited by Texxon in support of its position addresses whether a bankruptcy court may retain jurisdiction over pending matters, specifically adversary proceedings, when the underlying bankruptcy case is dismissed. *See, e.g.*, *Porges v. Gruntal & Co., Inc. (In re Porges)*, 44 F.3d 159, 162–63 (2d Cir. 1995); *Empire State Building Co. LLC v. New York Skyline, Inc. (In re N.Y. Skyline)*, 471 B.R. 69, 78 (Bankr. S.D.N.Y. 2012); *Stardust Inn, Inc. v. Doshi (In re Stardust Inn)*, 70 B.R. 888, 890 (Bankr. E.D. Pa. 1987).

3

No. 22-40537

Although Getty Leasing phrases the issue in terms of constitutional mootness, Getty Leasing does not dispute that the primary issue on appeal—the validity of the alleged contract—still exists between the parties, and that Texxon still has an interest in its resolution. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." (internal quotation marks omitted)). We therefore understand Getty Leasing's core argument—that the dismissal has the effect of making it such that we "cannot order effective relief even though a live dispute remains"—to be based in equitable mootness. *In re Hilal*, 534 F.3d 498, 500 (5th Cir. 2008).

Resolution of this dispute raises unsettled questions in bankruptcy law, none of which was brought up or briefed by the parties.[5] Because we may affirm on the merits, we leave those issues for another day. *See In re Pac. Lumber*, 584 F.3d at 239 & n.14 (considering a motion to dismiss on the basis of equitable jurisdiction first because it "logically precedes" consideration of the merits of the appeal and comparing *In re Continental Airlines*, 91 F.3d 553,

---

[5] For instance, it is unclear whether the bankruptcy court could properly determine the validity of the contract in the context of a motion to assume or whether the bankruptcy court should have required this dispute to be settled through a separate adversary proceeding. *Compare Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion)*, 4 F.3d 1095, 1099–1100 (2d Cir. 1993) (holding that contract issues, where one party has not violated a specific contractual clause, may not be decided as part of a motion to assume); *with In re Transcom Enhanced Servs., LLC*, 427 B.R. 585, 589 (Bankr. N.D. Tex. 2005) (stating that *Orion* should "not be read to limit a bankruptcy court's authority to decide a disputed contract issue as part of hearing an assumption motion" and then resolving, as part of a motion to assume, whether the debtor qualified as a certain type of provider for purposes of the contract), *vacated by AT&T Corp. v. Transcom Enhanced Servs., LLC*, No. 3:05-CV-1209-B, 2006 WL 8437448 at *3 (N.D. Tex. 2006) (finding the dispute moot and therefore declining to address whether the bankruptcy court acted correctly in addressing the contractual issue).

568–72 (3d Cir. 1996) (*en banc*) (Alito, J., dissenting) (reviewing the origin of equitable mootness and concluding that it does not present a jurisdictional question requiring consideration before the merits)); *see also Lifemark Hosp. of La., Inc. v. Lijeberg Enters., Inc.*, No. 98-30610, 1999 WL 195247 at *2 (5th Cir. 1999) ("Because we reach the merits of this case, we need not consider [the appellee's] motion to dismiss on the basis of equitable mootness, and this motion is therefore denied."); *Duff v. Central Sleep Diagnostics, LLC*, 801 F.3d 833, 841 (7th Cir. 2015) ("Because [the appellant's] appeal is patently frivolous on the merits, however, we need not come to a firm conclusion about equitable mootness.").

## II.

"We review the decision of a district court, sitting in its appellate capacity, by applying the same standards of review to the bankruptcy court's findings of fact and conclusions of law as applied by the district court." *In re Dean*, 18 F.4th 842, 843–44 (5th Cir. 2021) (citation omitted). Accordingly, "[w]e review conclusions of law and mixed questions of law and fact de novo and review findings of fact for clear error." *Id.* at 844. Here, Texxon appeals the bankruptcy court's denial of a motion to assume an alleged contract to purchase real estate from Getty Leasing.

Before declaring bankruptcy, Texxon had operated a gas station, convenience store, and car wash on the property located at 5301 North Lamar Boulevard (the "Leased Property") in Austin, Texas. Texxon rented this space from Getty Realty Corporation. In 2018, Saravana Raghavan, who testified that he was Texxon's owner, had a two-email exchange with Gary Bendzin, an asset manager from Getty Realty (not Getty Leasing, the appellee). Both below and on appeal, Texxon argues that this exchange constituted a contract between Texxon and Getty Leasing to purchase the Leased Property.

The exchange went as follows. On March 28, 2018, Bendzin emailed Raghavan with the subject line "Lamar Blvd., Austin, Texas." Bendzin wrote, "Saravana, We are interested in selling the property for $350,000. You would need to pay the open A/R balance as well." Attached to the email was a lease ledger from "Getty Reality Corp." for Texxon Petrochemicals, LLC. The next day, March 29, 2018, Raghavan replied, writing:

Gary

Sure. Thanks for your help man. Michael always help on the real estate closer. We both will work with you and get this done asap.

Michael – Lets meet today and discuss this property.

Neither party took any further action to finalize and effectuate a sale of the Leased Property.

Only three years later, in 2021, did Texxon first seek to execute the alleged contract, when it filed a motion to assume the alleged contract and consummate the sale. Getty Leasing opposed this motion, arguing that it never entered into a contract to sell the Leased Property. After a hearing, the bankruptcy court found there was no contract and denied the motion.

In so finding, the bankruptcy court determined there was insufficient or no evidence that (1) the debtor was a party to the proposed contract, (2) the debtor signed the proposed contract, (3) the proposed contract was sufficient as to property identity, (4) there was an unequivocal offer or acceptance, (5) the proposed contract contained the date certain for performance, and (6) the expiration of two years without performance by Texxon was reasonable or sufficient for contract formation. The district court, finding that the contract was insufficient as to property identity or comprised an unequivocal offer or acceptance, affirmed.

As with the bankruptcy and district courts, we similarly hold that this brief email exchange did not demonstrate an offer or acceptance, as required for a contract to be binding under Texas law. *See Angel, Tr. for Gobsmack Gift Tr. v. Tauch*, 642 S.W.3d 481, 488 (Tex. 2022). "To prove that an offer was made, a party must show (1) the offeror intended to make an offer, (2) the terms of the offer were clear and definite, and (3) the offeror communicated the essential terms of the offer to the offeree." *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied).

Texxon fails to show that the email exchange satisfied any of the three required elements of an offer. A statement that a party is "interested" in selling a property is not an offer to sell that property—it is an offer to begin discussions about a sale. *See Brown v. Haywood*, No. 07-02-0424-CV, 2004 WL 757962 at *4 (Tex. App.—Amarillo Apr. 8, 2004) (pet. denied) (holding that a request asking whether a party has an "interest" in a proposal was not an offer but rather an inquiry into the desire of the other party). Nor were the terms of the offer clear or definite—indeed, the emails do not clearly identify Getty Leasing as the supposed seller, as Bendzin represented Getty Realty and nothing else in the emails suggest Getty Leasing's involvement. *See Maddox v. Vantage Energy, LLC*, 361 S.W.3d 752, 757 (Tex. App.—Fort Worth 2012) ("Traditionally, Texas courts have presumed that a party contracts only for its own benefit…").

Finally, the alleged offer failed to identify the property to be conveyed. *See Naumann v. Johnson*, No. 03-19-00380-CV, 2021 WL 2212725 at *3 (Tex. App.—Austin June 1, 2021) ("In the sale of real property, the essential elements required, in writing, are the price, the property description, and the seller's signature." (citation omitted)). For a property description to be sufficient, "the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Morrow v. Shotwell*, 477 S.W.2d

538, 539 (Tex. 1972); *see also Davis v. Mueller*, 528 S.W. 3d 97, 101 (Tex. 2017) (describing this rule as "well settled" at the time *Morrow* was decided and noting that "[n]othing since then has occurred to call the rule into question"). Yet here, the alleged offer referenced, at most a Getty-owned property on Lamar Boulevard in Austin, Texas.[6] Put plainly, this is not enough information by which a person could identify the Leased Property with "reasonable certainty."

For these reasons, Texxon is unable to show the existence of a binding contract. Accordingly, we AFFIRM.

_____

[6] Although Texxon argues that the offer is more specific, namely, that it refers to a Getty-owned Texxon gas station and convenience store on Lamar Boulevard in Austin, Texas, there is nothing in the text of emails conveying such information.